**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SOUTHWEST KANSAS AREA COOPERATIVE #613, | |
| Plaintiff, | |
| v. | Case No. 6:25-cv-01102 |
| A.M., by and through his parents, NICK MUETING and PAULA MUETING, | |
| Defendants | |

## COMPLAINT

Plaintiff, Southwest Kansas Area Cooperative #613 for their Complaint pursuant to the Individual with Disabilities Act, 20 U.S.C 1400, et seq. ("IDEA") against A.M., by and through his parents, Nick Mueting and Paula Mueting, and states as follows:

### Parties, Jurisdiction and Venue

1.      Plaintiff, Southwest Kansas Area Cooperative #613 ("SKACD") is a public education cooperative in Dodge City, Kansas providing services throughout the Southwest Kansas region.

2.      Defendant, A. M., allegedly resides in Dodge City, Kansas despite living in a home in Hutchinson, Kansas and attending school in Hutchinson, Kansas.  A. M. can served with process at 810 Ragan Road, Dodge City, Kansas 67801.

3.      Defendants, Nick and Paula Mueting, allegedly reside in Dodge City, Kansas despite living in Hutchinson, Kansas and sending their children to school in Hutchinson, Kansas. Nick and Paula Mueting can served with process at 10 Ragan Road, Dodge City, Kansas 67801.

4.     A. M. qualifies for special education and related services because he has been diagnosed with visual impairment, nystagmus, hearing impairment, and a number of other diagnoses.

5.     A. M. is a "child with a disability" as defined by the IDEA, 20 U.S.C. 1401(3).

6.     A. M. is entitled to a free and appropriate public education, which is provided with services and accommodations listed in A. M.'s Individual Education Plan ("IEP").

7.     This is a civil action brought by SKACD as an aggrieved party by incorrect findings and decisions of the due process Hearing Officer and appeal Review Officer pursuant to 20 U.S.C. 1415(i)(2).

8.     This is a civil action within the jurisdiction of the United States District Court for the District of Kansas for federal court review of the hearing officer and review officer's decision pursuant to K.S.A. 72-3418(c), 20 U.S.C. 1415(1)(2-3)(A), and 28 U.S.C. 1331.

<u>**Statement of Facts**</u>

9.     Plaintiff provided special education services to A. M. from 2019 to May 2024.

10.     The Muetings filed the due process complaint related to this matter on September 30, 2021.  Ex. 1.

11.     The Muetings alleged a number of violations of the IDEA, which the Muetings allege denied A. M. the right to a free and appropriate public education. Ex. 1, Due Process Complaint. On October 11, 2021, Defendants filed an Amended Due Process Complaint. Ex. 2, Amended Due Process Complaint.

12.     The due process hearings commenced on or about April 18, 2022 and concluded on or around January 27, 2023.

13.     After the hearings concluded, the Muetings filed another due process complaint on October 18, 2023.  The issues, which are largely duplicative of the first due process complaint are set for hearing May 28 through 30, 2025.

14.     On February 5, 2024, the Muetings and the Districts submitted their proposed Findings of Fact and Conclusions of the Law.  Ex. 3, Respondents' Proposed Findings of Fact and Conclusions of Law; Ex. 4, Petitioners' Proposed Findings of Fact and Conclusions of Law.

15.     On March 4, 2024, the Muetings submitted Revised Findings of Fact and Conclusions of the Law to the Hearing Officer. Ex. 5, Petitioners' Revised Findings of Fact and Conclusions of Law.

16.     On March 18, 2024, the parties submitted replies to the opposing party or parties' Findings of Fact and Conclusions of the Law.  Ex. 6, Respondents' Reply in Opposition to Petitioners' Revised Findings of Fact and Conclusions of Law; Ex. 7, Petitioners' Reply to Respondents' Proposed Findings of Fact and Conclusions of Law.

17.     On March 27, 2024, Hearing Officer Larry Rute heard oral arguments on the parties' submissions.

18.     On April 4, 2024, the Hearing Officer issued a Notice of Decision on this matter. The Hearing Officer found that "A.M. did not receive a Free and Appropriate Public Education" because of procedural inadequacies.  Ex. 8, Hearing Officer's April 4, 2024 Decision.

19.     The Hearing Officer ordered the Districts to do the following: (1) pay the parents for their time transporting A. M. to and from Brehm Preparatory School ("Brehm") and for additional non-medical appointments in the amount of $15.00 per hour to compensate the parents, (2) provide four years of compensatory education for A. M. in the amount of $325,000.00 per year

(totaling $1,300,000 for four years), plus $30,000 per year (totaling $120,000 for four years) for the parents' transportation. *Id*. at 347.

20.     The award of compensatory education must continue for four years **or** until A. M. is accepted and enters a college of his choice. *Id*. at 350 (emphasis added).

21.     On or about May 3, 2024, the Districts appealed the decision to the Kansas State Board in accordance with K.S.A. 72-3418(b).

22.     The appeal argued Hearing Officer Rute does not have the authority to (1) issue an award of $1,420,000.00 in the administrative due process proceeding, (2) require the Districts to pay for the parents' time transporting A. M. to and from a compensatory placement, (3) the Hearing Officer improperly found that the Mueting's claims were not moot, and (4) the Hearing Officer's order addressed education and related services beyond the time period covered by the due process complaint.

23.     On April 17, 2025, the Review Officer issued a Review Decision that was a total of eight-pages and concluded A. M. was denied a free and appropriate public education ("FAPE"). Ex. 9, Review Officer's Decision.

24.     The Review Officer did not address any of the Districts' questions on appeal, rather the Review Officer only concluded A.M. was denied a FAPE. See Ex. 9, Review Officer's Decision.

25.     The Review Officer discussed the credibility of witnesses, but did not discuss the questions the Districts presented before the Review Officer. See Ex. 9, Review Officer's Decision.

26.     Importantly, the Review Officer did not issue any opinion on the amount of the award, which was a large portion of the Districts' appeal to the Review Officer. See Ex. 9, Review Officer's Decision.

157039344.1

27.    Thus, without an answer to the dispute on appeal, the Districts appeal to this Court seeking a decision regarding the same issues that went unresolved by the Review Officer.

28.    In or around August 2024, A. M. unilaterally enrolled in a private school within a different local educational agency.

29.    Since May 2024, A.M. has received no special education services by way of an IEP.  Rather, A. M. receives services chosen by his mother, Paula Mueting, and funded by SKACD and USD 443.

30.    Plaintiffs appeal the Hearing Officer's April 4, 2024 decision and the Review Officer's April 17, 2025 Review Decision because (1) the decision is unlawful under the IDEA, (2) the Hearing Officer should have dismissed Defendants' claims as moot, (3) the decision addresses A.M.'s education and related services provided after the time period covered by Defendants' Due Process Complaint in case no. 22DP443-001, and (4) the Review Officer did not address these issues in the Review Decision.

## COUNT I:
### The Hearing Officer's decision is unlawful under the Individuals with Disabilities  Education Act.

31.    The Hearing Officer's decision is unlawful under the IDEA because he does not have authority to grant the relief provided to Petitioners, including the award of $1,420,000.00 and payment to A.M.'s parents for their time transporting him.  The Review Officer's decision did not address this argument.

32.    The Hearing Officer does not have authority to require Plaintiff to pay Defendants $1,420,000.00.

33.    Monetary damage awards are forbidden under the IDEA. *See Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 143 S. Ct. 859, 864 (2023) (explaining that compensatory damages is a form of

relief that the IDEA does not provide); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 28 (1st Cir. 2006) ("[i]t is black letter law that punitive damages -- indeed money damages of any sort -- are not available in a private suit under the IDEA"); *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 125 (1st Cir. 2003) ("money damages, as opposed to compensatory equitable relief, are not available under IDEA"); *B.K.T. v. Unified Sch. Dist. No. 259*, No. 21-1217-EFM, 2022 U.S. Dist. LEXIS 114404, at *13 (D. Kan. June 27, 2022) (stating that a due process hearing officer cannot provide monetary relief); *Bell v. Bd. of Educ. of the Albuquerque Pub. Schs*, 652 F. Supp. 2d 1211, 1214 (D.N.M. 2008) ("[t]here is no claim for money damages under the IDEA"); *S.S. v. Dist. of Columbia*, 71 F. Supp. 3d 1, 6 (D.C. Cir. 2014) ("an IDEA hearing officer is not able to offer monetary relief under the IDEA")

34.    Under the IDEA, relief is limited to "'awards of compensatory education and equitable remedies that involve the payment of money, such as reimbursement to parents of expenses incurred on private educational services to which their child was later found to have been entitled.'" *Diaz-Fonseca*, 451 F.3d 13 at 32 (quoting *Nieves-Marquez*, 353 F.3d at 124). Compensatory education cannot include a prospective monetary award. *See Ms. M. v. Portland Sch. Comm.*, 360 F.3d 267, 273 (1st Cir. 2004) (the term "compensatory education" assumes a remedy involv[ing] prospective injunctive relief, which would not encompass tuition reimbursement"); *see also G v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 309 (4th Cir. 2003) (explaining that an award of compensatory education involves "prospective, injunctive relief crafted by a court to remedy what may be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student").

35.    The line between permissible monetary awards under the IDEA and compensatory education is well drawn by the court in *Diaz-Fonseca*. In *Diaz-Fonseca*, the court explained that

"tuition reimbursement is a backward-looking form of remedial relief; 'reimbursement merely requires the defendant to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP.'" 451 F.3d 13 at 32 (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 371-72, 105 S. Ct. 1996, 2003 (1985)).

36.    Comparing reimbursement to compensatory education, the court explained that "[i]t goes without saying that those 'expenses' must be actual and retrospective, not anticipated" in order to be provided under the IDEA and that "this reasoning is at the heart of the distinction...between 'tuition reimbursement' and 'compensatory education.'" *Id.*; *see also Bd. of Educ. v. Maez*, No. 16-cv-1082 WJ/WPL, 2017 U.S. Dist. LEXIS 8453, at *30 (D.N.M. Jan. 18, 2017) (explaining that parents are not entitled to payment for future services under the IDEA).

37.    Therefore, the only way in which an individual can receive a monetary award under the IDEA is if it is an award for reimbursement of the individual's actual expenses that a school district is required to pay under the IDEA.  Compensatory education cannot include prospective monetary relief. *Diaz-Fonseca*, 451 F.3d 13 at 32.

38.    The Hearing Officer ordered Plaintiff to pay Defendants a prospective monetary award of $1,300,000.00 as "compensatory education" for the next four years and $120,000.00 for A.M.'s anticipated travel expenses. Ex. 8, p. 349.

39.    As explained above, the prospective monetary award of $1,300,000.00 is not compensatory education under the IDEA because compensatory education cannot include any monetary award.  Rather, it is injunctive relief.

40.    Moreover, the Hearing Officer's order does not require A.M. to attend a specific school.  See generally, Ex. 8.  Therefore, the award of $1,300,000.00 is not based on the actual cost of tuition for A.M. to calculate reimbursement.

41.     Additionally, Defendants are not entitled to receive $120,000.00 for A.M.'s transportation expenses.  An award of $120,000.00 to Defendants for un-incurred expenses is prohibited as a prospective monetary award under the IDEA.  Further, no school has been identified in the Hearing Officer's order for A.M. to enroll that would require transportation. *Id.*  Therefore, the award is premature and prohibited under the IDEA.

42.     The way in which the IDEA structures the provision of education and related services for individuals with disabilities further supports a finding that compensatory education cannot include a prospective monetary award.

43.     The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).

44.     "A free appropriate public education ("FAPE") is one provided at the public expense, under public supervision and direction, and in conformity with an individualized education program ("IEP") developed for the child." (emphasis added) *Johnson v. Olathe Dist. Sch. Unified Sch. Dist. No. 233*, 316 F. Supp. 2d 960, 962 (D. Kan. 2003) (quoting 20 U.S.C. § 1401(8)(D)).

45.     The IDEA does not permit a child's parents to have full authority over the way in which their child's education and related services are provided by a public school. *See Johnson*, 316 F. Supp. 2d at 962, 975 (explaining that a school district's obligation to provide a FAPE does it require it to provide a child the education "preferred by the parents").

46.     Rather, if a public school cannot provide FAPE, then the Hearing Officer may order prospective injunctive relief requiring the school district prepare and pay for an IEP offering a private school education.  *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369-370 (1985).  What is not required is a trust fund for the parents discretion.

47.    The Hearing Officer's decision gives Defendants full authority over the way in which the total amount of $1,420,000.00 is spent by requiring the trust fiduciary to "distribute the funds as requested by A.M. and his parents (jointly) to be utilized for A.M.'s educational benefits." Ex. 8, p. 349.

48.    The decision anticipates no further involvement from Plaintiff in A.M.'s education and related services other than payment of $1,420,000.00.  In fact, the decision appears to anticipate that A.M. will unenroll from USD 443 by stating that "no child, including A.M., should be compelled to remain in a district that has continually violated the child's IDEA rights." *Id*. at 347.

49.    A. M. and his parents have relied on this quote for the reason in which A. M. has transferred to a private school in a different local educational agency without notice to the Districts or any discussion regarding implications to A.M.'s IEP.

50.    By issuing a prospective monetary award rather than an award of compensatory education, the Hearing Officer's order has gone against the purpose of the IDEA, which requires the provision of a FAPE under public supervision and direction.  The only supervision and direction over A.M.'s education moving forward is that of his parents and that is clearly his parents intent.

51.    His parents' control and supervision of A. M.'s services is evidenced by the lack of any updates from the Muetings on A. M.'s education other than accounting provided to the Districts showing the Muetings have spent approximately $189,368.64 on their chosen services for A. M. from June 2024 to December 2024. Ex. 14, Trust Accounting.  The Hearing Officer's April 4, 2024 order is thus unlawful under the IDEA.

52.    The Hearing Officer has not provided reimbursement or injunctive relief – rather the award is being used as a checkbook for whatever the Muetings desire without any IEP or input from a school district.

53. The Review Officer failed to address this issue.

54. Plaintiff asks the Court to issue a finding acknowledging the Hearing Officer's award and decision issued on April 4, 2024, is unlawful.

**COUNT II:**
**The Hearing Officer does not have authority to order Plaintiff**
**to pay Defendants for their time transporting A.M. to and from Brehm.**

55. Under the IDEA, a parent who transports their child to and from the child's placement is entitled to their actual identifiable cost of transportation. *A.S. v. Harrison Twp. Bd. of Educ.*, No. 14-147 (NLH/KMW), 2016 U.S. Dist. LEXIS 57008, at *15-16 (D.N.J. Apr. 29, 2016).

56. Actual identifiable costs do not include payments to parents for their time and services or other fees. *Id*.

57. The actual cost of transportation that is eligible for reimbursement under the IDEA includes the cost of "mileage, tolls, and over-night stays at hotels incurred" for trips in which the parents drop off the eligible child at the start of the semester and when parents pick the child up at the end of the semester. *Perkiomen Valley Sch. Dist. v. R.B.*, 533 F. Supp. 3d 233, 259 (E.D. Pa. 2021).

58. The court's decision in *Ruby J. v. Jefferson County Bd. of Educ.*, provides guidance here. 122 F. Supp. 3d 1288 (N.D. Ala. 2015). In *Ruby J.*, the mother of a disabled child alleged that she is "entitled to recover additional 'costs'" for transporting her child because she "saved [the district] from the necessity of incurring various expenses, including hiring a bus driver and medical support." *Id*. at 1308. She claimed "FAPE requires schools to reimburse parents not only for the out-of-pocket costs of the services that they provide for their eligible children, but also for their time and effort in providing those services." *Id*. at 1309.

59.     The court found that the mother failed to show her "actual and identifiable costs" exceeded those beyond the mileage reimbursement rate. *Id*. at 1309.  Finding that what the mother "actually s[ought] [wa]s compensation," the court held that she is "entitled to costs, not wages" for her time and services. *Id*.  The court found it immaterial that the school would have had to pay an employee to provide the transportation services provided by the mother because a school does not deny a child a FAPE by offering to reimburse a parent for only the cost of transporting an eligible child to and from the child's placement, "and not the costs that [the school] would have had to pay an employee" had an employee transported the child. *Id*.  The court further explained that "hypothetical expenses associated with [the] transportation of a [disabled child] by a means other than reimbursing [the parents]" should not be considered by courts because the parent does not actually bear the hypothetical costs when transporting their child. *Id*. at 1308-09.  Any costs other than actual expenses (e.g., mileage reimbursement) are "far too speculative for [a] court to entertain." *Id*. at 1308.

60.     Likewise, in *A.S. v. Harrison Twp. Bd. of Educ.*, the plaintiff claimed that the school district should have compensated them for their "time and effort" transporting their child. 2016 U.S. Dist. LEXIS 57008, at *14 (D.N.J. Apr. 29, 2016).  The court held that the IDEA does not require the school district to pay plaintiffs for their time and effort spent transporting their child, and reimbursement for mileage covered all actual transportation expenses. *Id*. at 15-16.

61.     Many courts have issued similar findings. *See Steckelberg v. Chamberlain Sch. Dist.*, No. 4:21-CV-4147-LLP, 2022 U.S. Dist. LEXIS 217866, at *37 (D.S.D. Nov. 30, 2022) (deducting a travel reimbursement award in the amount the parents lacked documented evidence, like receipts, of their expenses); *S. L. v. Upland Unified Sch. Dist.*, 747 F.3d 1155, 1160 (9th Cir. 2014) (awarding plaintiff reimbursement for her mileage expenses for transporting her child to the

child's private placement); *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1527 (9th Cir. 1994) (finding the actual cost of transportation to be reimbursable under the IDEA when the student's placement is not near the family's residence).

62.     Not only does the IDEA not require school districts to pay plaintiffs for their alleged loss of time transporting their child, it forbids them from doing so. *See VW v. N.Y. C. Dep't of Educ.*, 2022 U.S. Dist. LEXIS 147630, at *18 (S.D.N.Y. Aug. 17, 2022) (explaining that monetary damages are not available under the IDEA and, accordingly, cannot be awarded to a plaintiff seeking reimbursement "for the loss of her time" transporting her child); *see also E.C. v. U.S.D. 385 Andover*, No. 18-1106-EFM, 2019 U.S. Dist. LEXIS 79281, at *9 (D. Kan. May 10, 2019) (finding that compensatory damages are not available under the IDEA).

63.     The Hearing Officer's April 4, 2024 order requires Plaintiff to pay Defendants "$15.00 per hour to compensate them, in part, for the loss of 16 days from their work and home care responsibilities." Ex. 8, p. 349.

64.     The order thus requires Plaintiff to compensate Defendants for their time and effort transporting A.M.  The award is in addition to Defendants' actual expenses incurred by transporting A.M. and is prohibited under the IDEA.

65.     Since the ruling, the Defendants have charged the Trust established by the Hearing Officer's order $20.00 per hour for their time transporting A.M. and time spent waiting for A.M. wherever they have transported him on top of the mileage they are charging the Trust. Ex. 14, Trust Accounting.

66.     A.M.'s parents have earned approximately $5,764.95 since April 2024 in wages and meal per diems for transporting and waiting on A.M., which is relief the Hearing Officer did not have authority to order.  Ex. 14, Trust Accounting.

**COUNT III:**
**The Hearing Officer improperly found that**
**Defendants' claims in their Amended Complaint are not moot**

67.     A court lacks jurisdiction over a mater if it is moot. *Garcia v. Bd. of Educ. of Albuquerque Pub. Schs*, 520 F.3d 1116, 1123 (10th Cir. 2008).  To prohibit a finding that a case is moot, there must be an actual case in controversy before the court. *Id.* "To satisfy the case in controversy requirement...the parties' dispute must not only be live at the time the suit is filed, but the parties "must continue to have a personal stake in the outcome of the lawsuit throughout the various stages of litigation." *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)) (internal quotations omitted).

68.     This requirement "means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable decision." *Garcia*, 520 F.3d at 1123 (quoting *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998)).

69.     The "crucial question" a court must ask when evaluating whether a case is moot is "whether granting a present determination of the issues offered...will have some effect in the real world." *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000)). "No matter how vehemently the parties dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiff's particular legal rights." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)).

70.     A court reviews each claim to determine whether a case is moot with respect to each form of relief sought by the plaintiff. *Id.*  When the plaintiff "has won all the relief sought when

[they] commenced [the] litigation...there is no further relief that can be afforded" and the plaintiff's claims are moot. *Id*. at 1249-50.  When a plaintiff has won their relief sought, any opinion issued by the court would be nothing more than an advisory opinion. *Id*. at 1249.

71.    In *Steven R.F. v. Harrison Sch. Dist. No. 2*, the school district sought to place a student at a separate school from Alpine, the one that he had been attending. 924 F.3d 1309, 1311 (10th Cir. 2019).  The student's mother disagreed and wanted the student to be placed at Alpine. *Id*. The mother filed a complaint, which ultimately led to a district court ordering the school district to reimburse the mother for the student's tuition at Alpine for the school year at issue. *Id*. at 1312¬13. The student remained at Alpine throughout the litigation and the school district paid for the student's placement. *Id*. at 1313, 1315.  The Tenth Circuit dismissed the appeal, vacated the lower court's ruling, and remanded the case with instructions for it to be dismissed as moot, explaining that if it issued a decision, it "would merely tell the parties who was correct." *Id*. at 1316 (quoting *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 599 (7th Cir. 2006)) (internal quotations omitted); *see also Nathan M. v. Harrison Sch. Dist. No. 2*, 942 F.3d 1034, 1040, 46 (10th Cir. 2019) (finding a case moot where the child remained at the placement demanded by the Parents pursuant to their claims against the school district because a decision on the merits would have no effect on the parties in the real world).

72.    In *Steven R.F.*, the Tenth Circuit further found, and reiterated in *Nathan M.*, that the mother's claims were not capable of repetition yet evading review, an exception to the mootness doctrine, because the mother's claims were based on the specific actions of the district in relation to the 2016-2017 school year and the record failed to indicate that the District would "violate the IDEA in the specific ways that Mother alleges it did in this case." (emphasis added.) *Steven R.F.*, 924 F.3d at 1315-16; *Nathan M.*, 942 F.3d at 1043.

73.    A plaintiff "cannot salvage their otherwise moot claims by reframing them in broader, less defined terms" to fall within this exception.  *Patrick G. v. Harrison Sch. Dist. No. 2,* 40 F.4th 1186, 1205 (10th Cir. 2022).

74.    Continued disputes between the parties and "lock[ing] horns" over a student's education and placement is insufficient to show the specific IDEA violations will recur based on the facts alleged. *Nathan*, 942 F.3d at 1045-46.

75.    The Hearing Officer found that Plaintiff's argument that Defendants' claims are moot to be without merit. Ex. 8, p. 349.  The Hearing Officer's finding is improper for multiple reasons.

76.    First, in or around April 12, 2022, Plaintiff offered to pay for A.M.'s education and related services at Perkins School for the Blind ("Perkins") or Brehm. Respondent Exhibit 8008.

77.    The Hearing Officer has ordered Plaintiff to provide A.M. four years of compensatory education and provides Perkins as an example of a school that A.M. might attend. Ex. 8, p. 249.

78.    The Hearing Officer has thus ordered what Plaintiff agreed to provide to A.M. nearly two years prior to the Hearing Officer's decision.  Defendants thus won their relief in 2022, and the Hearing Officer should have dismissed their claims as moot.

79.    Second, as with the plaintiffs in *Smith*, *Steven R.F.*, and *Nathan M.*, Defendants won the relief they sought pursuant to their Amended Complaint when they commenced this action.

80.    Defendants sought the following relief through this action to resolve "all of the" issues addressed in their Amended Complaint: (1) placement of A.M. at Brehm (until such time as a placement at Perkins School for the Blind may become available); (2) that the preceding residential out-of-district placement at Brehm (or Perkins should a placement become available)

will continue through the end of the school year in which A.M. turns 21 as compensatory education; (3) the Districts will provide additional TVI services to allow such services to be embedded within A.M.'s classes in addition to the scheduled pull-out time; (4) the Districts will provide the funding for A.M.'s needed assistive technology devices (including an embosser) so that such devices will be able to travel with A.M. back and forth to Kansas and Brehm (or Perkins if a placement for A.M. becomes available); (5) the Districts will continue to retain Heidi Molbak (or, if Ms. Molbak is not available for some reason, another educational specialist mutually agreed upon by the parties) as the educational specialist for A.M. to continue to work with Brehm and to continue to determine whether a placement at Perkins (or some other more suitable placement) will become available; (6) the Districts will either provide transportation to Brehm (or Perkins if a placement should become available) or the Districts will reimburse the parents for their full transportation and lodging costs, including reasonable family visits; (7) the Districts will reimburse the parents for any costs related to the use and/or breakage of their personal assistive technology devices; (8) the Districts will reimburse the parents for their attorney costs from the date of the settlement agreement to the conclusion of the due process proceeding and any subsequent appeal; (9) SKACD staff members, including SKACD administration, shall receive appropriate training regarding special education laws and requirements so that the above violations will not recur. Ex. 2, Amended Complaint, p. 23-24.

81.     At the time Defendants filed their Amended Complaint, A.M. attended school at Brehm. Ex. 1, Initial Complaint, p. 13; Ex. 2, Amended Complaint, p. 15.

82.     Plaintiff paid for the entirety of A.M.'s placement and services at Brehm; Appellees' were not billed for A.M.'s placement or services at Brehm. Ex. 11, Vol. 27, P. Mueting Testimony 4129: 6-12.

83. Plaintiff additionally agreed to place A.M. at Brehm (or Perkins). Respondent Exhibit 8008. Therefore, Plaintiff agreed to provide and provided the relief requested by Defendants in their Amended Complaint.

84. No actual dispute is redressed by the Hearing Officer's decision with respect to Defendants' first and second requests for relief in their Amended Complaint.

85. Defendants' claims for compensatory education therefore should have been dismissed by the Hearing Officer as moot.

86. Defendants' following additional requests for relief are moot:

a. TVI Services: Defendants requested Plaintiff to "provide additional TVI services to allow such services to be embedded within A.M.'s classes. Ex. 2, Amended Complaint, p. 23. Plaintiff agreed to provide additional TVI services as recommended by Steve Nation, who recommended that A.M. should receive approximately 4 hours of TVI services per week. Ex. 11. Vol. 27, P. Mueting Testimony 4130: 9-20; Ex. 12, Respondent Hearing Exhibit 8008, p. 1. Defendants' request for additional TVI services is moot.

b. Assistive Technology: Defendants requested that Plaintiff "provide the funding for A.M.'s assistive technology devices." Ex. 2, Amended Complaint, p. 23. Plaintiff agreed to provide assistive technology devices to A.M. as recommended by Mr. Nation, including the provision of a CCTV, translation software, BrailleNote, VoiceOver or other feature, Braille books, Braillewriter, tactile graphics, and labeling. Ex. 11, Vol. 27, P. Mueting Testimony 4131: 2-18, 4132, 9-21; Ex. 12, p. 1-2; Ex. 13, Parent Hearing Exhibit 210, p. 9-10. Moreover, Plaintiff has provided A.M. multiple assistive technology devices to A.M.,

including but not limited to a BrailleNote, iPad, CCTV, Perkins Brailler; computer and laptop, embosser, FM System, Focus 40, and Orbit 20. Defendants' request that Plaintiff provide A.M. assistive technology devices is therefore moot.

c.      Education Consultant: Defendants also requested that Plaintiff retain Ms. Molbak or another mutually agreed upon educational consultant "to work with Brehm and to continue to determine whether a placement at Perkins (or some other more suitable placement) will become available." Ex. 2, Amended Complaint, p. 23. Plaintiff retained Ms. Molbak from the 2021-2022 school year through February of 2024. Defendants acknowledge that Plaintiff retained an additional education consultant, Meryl Duguay. Ex. 11, Vol. 27, P. Mueting Testimony 4102:21-25; 4103:1-1. Furthermore, Defendants stipulated and agreed to "retain Ms. Molbak or another suitable educational specialist mutually agreed upon by the parties for as long as A.M. is eligible to receive services." Ex. 12, p. 2. Plaintiff now retains an IEP facilitator as proposed by Defendants' counsel. Plaintiff has thus provided this relief from the time Defendants filed their Amended Complaint. Defendants' request is therefore moot.

87.      Defendants' claims in their Amended Complaint do not fall within the exception to the mootness doctrine that they are capable of repetition yet evading review.

88.      The allegations supporting Defendants' requests for relief are fact specific to the time period covered by Defendants' Amended Complaint. A.M. does not attend and has no plans to return to the schools addressed in Defendants' Amended Complaint.

89.     Even if he did, the factual circumstances would not be the same as those described in Defendants' Amended Complaint.  Defendants' claims are therefore moot and should have been dismissed by the Hearing Officer and the Review Officer should have addressed this argument.

**COUNT IV:**
**The Hearing Officer's order addresses A.M.'s education and**
**related services beyond the time period covered by**
**Defendants' Due Process Complaint in this case no. 22DP443-001.**

90.     Under the IDEA, a parent can submit a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(a).

91.     A parent must file a complaint within two years of the date they "knew or should have known about the alleged action that forms the basis of the complaint." Id. § 1514(b)(6)(B).

92.      Parents are prohibited from raising allegations outside of those raised in their complaint once the due process hearing begins. See 20 U.S.C. § 1415(f)(3)(B) (stating that a "party requesting [a] due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [due process complaint] notice").

93.     If the petitioner has a complaint separate from those raised in their due process complaint, they are required to file a separate due process complaint to address the issue. K.S.A. 72¬3415(f)(1).

94.     Defendants have filed two due process complaints against Plaintiff which are before Hearing Officer Larry Rute.  One complaint is in case no. 22DP443-001, and the other is in case no. 24DP443-001. Ex. 1, 2; Ex. 10, Second Due Process Complaint.

95.     Defendants filed their initial Due Process Complaint in case no. 22DP443-001 on September 30, 2021 and filed an Amended Complaint in the same case on October 11, 2021. See

generally, Ex. 1, 2. Defendants limited the issues raised in case no. 22DP443-001 to events occurring after December 12, 2019. Ex. 1, p. 1.

96.     Therefore, case no. 22DP443-001 addressed A.M.'s education and related services provided by Plaintiff from December 12, 2019 through September 30, 2021. Despite the lookback period for the issues raised in Defendants' Initial and Amended Complaint being under two years, the Hearing Officer's decision provides four years of compensatory education to A.M.

97.     The Hearing Officer's April 4, 2024 order awarding four years of compensatory education and payment for four years of transportation expenses appears to resolve issues raised in Defendants' complaints in case nos. 22DP443-001 and 24DP443-001.

98.     The order addresses A.M.'s education and related services occurring after the filing of Defendants' complaint in case no. 22DP443-001.1

99.     Furthermore, the Hearing Officer expressly adopts Defendants' Findings of Fact and Conclusions of Law in its entirety. See Ex. 8, p. 259 (stating he "has determined significant FAPE violations by the Districts and has adopted Defendants' Findings of Fact and Conclusions of Law").

100.    Notably, Defendants' Findings of Fact and Conclusions of Law resolves their claims raised in case nos. 22DP443-001 and 24DP443-001 by providing relief on Defendants' allegations through the date they filed their Findings of Fact and Conclusions of Law. See Ex. 5.

101.    The relief ordered by the Hearing Officer in his April 4, 2024 order therefore appears to be based on his findings against Plaintiff with respect to cases 22DP443-001 and 24DP443-001.2.

102.    Yet, the Hearing Officer reversed his decision granting Plaintiff's Motion for Summary Judgment in the 24DP443-001 matter and the parties will return for a hearing in May 2025 to allow Defendants to argue for double recovery and request more relief despite having more than the maximum relief provided under the IDEA.

103.     Plaintiff asks the Court to clarify the impact of the Hearing Officer's April 4, 2024 decision on case nos. 22DP443-001 and 24DP443-001, which the Review Officer did not address in the Review Decision.

## Request for Relief

For the reasons explained above, Plaintiff appeals the Hearing Officer's April 4, 2024 order and the Review Officer's decision dated April 17, 2025.  Plaintiff requests the Court find that the (1) Hearing Officer's April 4, 2024 order is unlawful under the IDEA, and (2) Defendants' claims in their Amended Complaint are moot.  Plaintiff also requests the Court issue a determination on whether the Hearing Officer's April 4, 2024 order resolves Defendants' claim in case no. 24DP443-001 in addition to those in case no. 22DP443-001 and, if so, to what extent.

/s/ Alan L. Rupe
Alan L. Rupe, KS # 08914
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone:  316-609-7900
alan.rupe@lewisbrisbois.com

*Attorney for Plaintiff*

157039344.1